JUDGE COTE

09 CV 7987

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

RIGHT SEA LIMITED,

             Plaintiff,

    - against -

OCEAN TRANSPORT & SHIPPING (ASIA) PTE. LTD.,

             Defendant.

-------------------------------------------------------X

09 Civ. _____

ECF

RECEIVED
SEP 17 2009
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, RIGHT SEA LIMITED (hereinafter "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, OCEAN TRANSPORT & SHIPPING (ASIA) PTE. LTD. (hereinafter "Defendant") alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.    At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity organized and existing under the foreign law with an address at P.O. Box 957, Offshore Incorporate Centre, Road Town, Tortola, British Virgin Islands.

3.      Upon information and belief, Defendant was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Singapore with a registered address at 9 Kelantan Lane, # 06-01, Singapore 208628.

4.      At all times material to this action, Plaintiff was the disponent owner of the motor vessel "M/V VINASHIN BAY" (hereinafter the "Vessel").

5.      By a charter party dated April 22, 2009 (hereinafter "the Charter Party") Plaintiff time chartered the Vessel to Defendant. *See Charter Party dated April 22, 2009 annexed hereto as Exhibit "1."*

6.      Plaintiff delivered the Vessel into the service of Defendant on May 19, 2009 pursuant to the terms of the Charter Party and has duly performed all of its obligations under the Charter Party.

7.      The Charter Party provides that Defendant shall pay charter hire to Plaintiff at the rate of US$4,800.00 per day, pro rata, commencing from the day and time of delivery until the day and time of redelivery. *See Exhibit "1" Clause 4.*

8.      Charter hire is payable to Plaintiff four (4) banking days after Vessel delivery for the first fifteen (15) days hire, and thereafter, every fifteen (15) days in advance. *See Exhibit "1," Clause 59.*

9.      The Vessel was redelivered into the possession of Plaintiff on August 20, 2009.

10.     After the Vessel had been redelivered to Plaintiff at the end of the charter, there remains due and owing to the Plaintiff the sum of $90,081.49 being the amount outstanding for charter hire and/or other payments due under the Charter Party.

11.     Defendant's failure to pay the full amount of $90,081.49 due and owing to Plaintiff constitutes a breach of the Charter Party contract.

12.    As a result of Defendant's breach of the Charter Party as aforesaid, Plaintiff has suffered damages in the principal amount of $90,081.49, as best as can now be estimated exclusive of interest, reasonable attorneys' fees and arbitration costs, and taking into account applicable credits for Defendant's account and hire payments made to Plaintiff under the Charter Party as set forth in detail in Plaintiff's Final Statement of Accounts. *See Final Statement of Account annexed hereto as Exhibit "2."*

13.    Despite due demand, Defendant has failed to remit the overdue hire to Plaintiff pursuant to the Charter Party.

14.    Pursuant to the terms of the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply. *See Exhibit "1," clause 80.* Plaintiff will commence arbitration after the commencement of this action and jurisdiction is obtained over Defendant.

15.    This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of London arbitration proceedings.

16.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

17.    As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| a. | Plaintiff's Principal Claim:<br>*Outstanding Hire* | $90,081.49 |
| b. | Interest:<br>*3 years at 5 % per annum, compounded quarterly* | $14,481.01 |

    c.      Estimated recoverable legal fees and arbitration costs:      $30,000.00

**Total:**                                            **$134,562.50**

18.      The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "3."*

19.      Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of the Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.      That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.      That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

D.      That since the Defendant cannot be found within this District pursuant to Rule B of

the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and also pursuant to United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount $134,562.50 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

E.      That in the alternative, this Court enter judgment against Defendant on the claims set forth herein;

F.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G.      That this Court award Plaintiff its attorney's fees and costs of this action; and

H.      That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: September 17, 2009

                    The Plaintiff,
                    RIGHT SEA LIMITED

                    By: _____
                    Patrick F. Lennon
                    Darin L. Callahan
                    LENNON, MURPHY & LENNON, LLC
                    420 Lexington Ave., Suite 300
                    New York, NY 10170
                    Phone / Fax (212) 490-6050 / 6070
                    pfl@lenmur.com
                    dlc@lenmur.com

## ATTORNEY'S VERIFICATION

1.      My name is Darin L. Callahan.

2.      I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.      I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.      I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.      The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.      The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.      I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      September 17, 2009

_Darin L Callahan_
_____
                    Darin L. Callahan

# Exhibit 1

CHARTER PARTY OF MV "VINASHIN BAY" DATED JANUARY 22ⁿᵈ, 2009

Copyright © 1981 and Published by The Association of
Ship Brokers & Agents (U.S.A.), Inc. (ASBA), New York
This derivative work may not be copied without the
permission of the copyright.
Code Name: ASBATIME



# TIME CHARTER

## New York Produce Exchange Form
### Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; June 12th, 1981

| | | |
|---|---|---|
| | THIS CHARTER PARTY, made and concluded | 1 |
| | on the 22nd.................................................day of April................................2009 | 2 |
| Owners | between *Right Sea Limited* | 3 |
| | .............................................................................Owners of | 4 |
| Description | the good...............................................Steamship/Motorship *"Vinashin Bay"* | 5 |
| of | of........................of.........................tons gross register, and | 6 |
| vessel | .................................tons net register, having engines of......... | 7 |
| | horsepower and with hull, *hatches and cargo spaces*, machinery and equipment in a throughly | 8 |
| | efficient, | 8 |
| | state, and classed V.R...................................................of about | 9 |
| | 25,526.......................................................cubic meter grain/bale capacity | 10 |
| | ........................................................................and about | 11 |
| | 20,076...........................................long/metric tons deadweight capacity (cargo and | 12 |
| | bunkers, including fresh water and stores not exceeding | 13 |
| | long/metric tons) on a salt water draft of 7.8 meters.........................on summer | 14 |
| | freeboard, inclusive of permanent bunkers, which are of the capacity of about | 15 |
| | ................................................................long/metric tons of | 16 |
| | .......................................................................fuel oil and | 17 |
| | long/metric tons of.....................................................and | 18 |
| | capable of steaming, fully laden, under good weather conditions about | 19 |
| | knots *see clause 39* on a consumption of about *(description clause)* | 20 |
| | long/metric tons of......... The speed as described in this clause is warranted throughout the | 21 |
| | currency of this charter party. | 22 |
| | now......................................................................and | 23 |
| | .........................................................................and | 24 |
| Charterers | *Ocean Transport & Shipping (Asia) Pte Ltd as*........Charterers of Singapore. | 25 |
| | | 26 |
| Duration | The Owners agree to let and the Charterers agree to hire the vessel from the | 27 |
| | time of delivery for about *25/45 days without guarantee excluding any* | 28 |
| | time for drydocking, timecharter always *via safe ports / safe berths / safe anchorages, always* | 29 |
| | *afloat. except naabaa permitted for 1 time charter trip during the currency of this CP as per* | 30 |
| | *clause 71, always accessible, always within Institute Warranty Limits (IWL) with lawful harmless* | 30 |
| | *clinker/petcoke or fertilizer in bulk, which to be loaded in accordance with IMO / local regulations* | 30 |
| | *within permitted trading limits, within below mentioned trading limits.* | 30 |
| Sublet | Charterers shall have liberty to sublet the vessel for all or any part of the | 31 |
| | time covered by this Charter, but Charterers shall remain responsible for the | 32 |
| | fulfilment of this Charter. | 33 |
| Delivery | Vessel shall be placed at the disposal of the Charterers, *dropping last outward* | 34 |
| | *sea pilot, Hochiminh City, any time day night Sundays and holidays included.* | 35 |
| | | 36 |
| | ..........................................................................in | 37 |
| | such dock or such berth or place (where she may safely lie always afloat, | 38 |
| | at all times of tide, except as otherwise provided in Clause 6) as the Charterers | 39 |
| | may direct, if such dock, berth or place be not available, time shall count as | 40 |
| | provided in Clause 5, see clause 48. Vessel on her delivery shall be ready to receive | 41 |
| | Charterers' intended cargo with | 42 |
| | clean-swept holds and tight staunch, strong and in every way fitted for ordi- | 42 |
| | nary cargo service, having water ballast and with sufficient power to | 43 |
| | operate all | 44 |
| | cargo-handling gear simultaneously (and with full complement of officers and | 45 |
| | crew for a vessel of her tonnage and flag), to be employed in carrying lawful and in | 45 |
| | accordance with IMO Regulations merchant- | 45 |



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

| | |
|---|---|
| Dangerous Cargo | dise excluding any goods of a dangerous, injurious, flammable or corrosive 46<br>nature unless carried in accordance with the requirements or recom- 47<br>mendations of the proper authorities of the state of the vessel's registry and of 48<br>the states of ports of shipment and discharge and of any intermediate state or 49<br>ports through whose waters the vessel must pass. Without prejudice to the 50<br>generality of the foregoing, in addition the following are specifically excluded: 51<br>livestock of any description, arms, ammunition, explosives. 52 |
| Cargo Exclusions | *Intended cargo: clinker/pet/coke or fertilizer, likely to load in Indonesia/Malaysia for* 53<br>*discharge Bangladesh/India range* 53<br>*Owners cargo/trading exclusions always to apply (see clause 5371)* 54<br>*Cargoes to be loaded/stowed in accordance with IMO regulations & recommendations* 55 |
| | 56 |
| Trading Limits | The vessel shall be employed in such lawful trades between safe ports and 57<br>places within Institute Warranty Limits (IWL) via China, Faresst, South East Asia, 58<br>Bangladesh, India, Pakistan, Persian Gulf, Iraq, East Africa excluding any places 71 59<br>............................................................................ 60<br>............................................................................ 61<br>............................................................................ 62<br>as the Charterers or their agents shall direct, on the following conditions: 63 |
| Owners to<br><br>Provide | 1. The Owners shall provide and pay for the insurance of the vessel and 64<br>for all provisions, *garbage removal unless compulsory in port disbursements,* 65<br>Cabin, deck, engine-room and other necessary stores, *including* 66<br>*studing boiler, fresh water and lubolis,* shall pay for wages, consular shipping and 66<br>discharging 67<br>fees of the crew also all consular fees pertaining to vessel's nationality and charges for 67<br>port services *including boatage* pertaining to the crew; shall 68<br>maintain vessel's class and keep her in a thoroughly efficient state in hull, 68<br>hatchcovers and cargo spaces, machinery and equipment with all certificates necessary 69<br>*to comply with requirements at all ports of call,* for and during the service. 69 |
| Charterers to<br><br>Provide | 2. The Charterers, while the vessel is on hire, shall provide and pay for all 70<br>the fuel except as otherwise agreed, port charges, *canal tolls, towage, boatage* 71<br>*compulsory, customary and recommended,* pilotages, linages, agen- 71<br>cies, commissions, consular charges ( except those pertaining to individual 72<br>crew members or flag of the vessel), and all other usual expenses except those 73<br>stated in Clause 1, but when the vessel puts into a port for causes for which 74<br>vessel is responsible, then all such charges incurred shall be paid by the 75<br>Owners. Fumigations ordered because of illness of the crew or cargo *carried prior to* 76<br>*delivery shall be for* 76<br>*Owners' account. Owners to keep on board a valid derattization exemption certificate* 77<br>*throughout the currency of the charter.* Fumigations ordered because of cargoes carried 77<br>or ports 77<br>visited while vessel is employed under this Charter shall be for Charterers' 78<br>account. All other fumigations shall be for Charterers' account *after vessel has* 79<br>*been on charter for a continuous period of six months or more.* 80<br>Charterers shall provide necessary dunnage and shifting boards, also 81<br>any extra fittings requisite for a special trade or unusual cargo, but Owners 82<br>shall allow them the use of any dunnage and shifting boards already aboard 83<br>vessel. 84 |
| Bunkers on<br>Delivery<br>and<br>Redelivery | 3. The Charterers on delivery and the Owners on redelivery shall take 85<br>over and pay for all fuel and diesel oil remaining on board the vessel as 86<br>hereunder. The vessel shall be delivered with *see clause 54* 86<br>*long/metric*/ tons of fuel oil at the price of............................... per ton; 87<br>..............................tons of diesel oil at the price of 88<br>per ton. The vessel shall be redelivered with: 89<br>................tons of fuel oil at the price of.................................... per ton; 90<br>..............................tons of diesel oil at the price of.................................... per tone 92<br>............................................................................ 93<br>............................................................................ 94<br>*(*Same tons apply throughout this clause)* 95 |
| Rate of<br>Hire | 4. The Charterers shall pay for the use and hire of the said vessel at the 96<br>rate of *USD 4,800.00* to Owners daily, 97<br>*including overtime/lube/fw....* 97<br>*in .......................................................................* United States Currency 98 |





CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

per ton on vessel's total deadweight carrying capacity including bunkers, stores, on .................................................. Summer freeboard per calendar month, commencing on and from the day and time of her delivery, as aforesaid, and at and after .................................................. 100
101
101

**Redelivery** the same rate for any part of a day month; hire shall continue until the hour of the day of her redelivery in like good order and condition, see clause 38, ordinary wear and tear, 102
103
103

**Areas and Notices** excepted, to the Owners (unless vessel lost) at see clause 36 .................................. 104
105

.................................................................................................................................. 105

.................................................................................................................................. 106

.................................................. unless otherwise mutually agreed. 107

Charterers shall to give Owners not less than 10 .................................. days notice of vessels expected date of redelivery and probable port of redelivery more than give approximate 15/12/8 days and 5/3/2/1 days definite redelivery notice. 108
109
110

**Hire Payment and Commencement** 5. Payment of hire shall be made so as to be received by Owners or their designated payee in New York, i.e. see clause 39 .................................................. 111
112

.................................................................................................................................. 113

.................................................................................................................................. 114

.................................................. In United States currency, in funds available to the Owners on the due date, semi monthly, every 15 days in advance, and for the 115
116
116

last 15 days half month, or part of same the approximate amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day as it becomes due, if so required by Owners. Failing the punctual and regular payment of the hire, see clause 81 or on any fundamental breach of this Charter, the Owners shall be at 117
118
119
120
120

liberty to withdraw the vessel from the service of the Charterers, without prejudice to any claims they (the Owners) may otherwise have on the Charterers. Time shall count from the date and the hour the vessel has been at the disposal of the charterers 7 A.M. on the working day following that on which written notice of readiness has been given to Charterers, or their agents before 4 P.M. but if required by Charterers, they shall have the privilege of using vessel at once; in which case the vessel will be on hire from the commencement of work. 121
122
123
124
125
126
127

**Cash Advances** See clause 60 Cash for vessel's ordinary disbursements at any port may be advanced, as required by the Captain, by the Charterers or their agents, subject to 2 1/2 percent commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances. 128
128
129
130
131
132

**Berths** 6. Vessel shall be loaded and discharged in any safe dock or every safe berth, safe anchorage of safe Place that Charterers or their agents may direct, provided the vessel can safely lie always afloat at any time of tide subject to Owners nesbro (clause 79) except of such places where it is customary for similar size vessels to safely lie aground. 133
133
134
135
136
136

**Spaces Available** 7. The whole reach of the vessels holds, deck subject to Master's approval and usual places of loading (not more than she can reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the Charterers disposal, reserving only proper and sufficient space for ships officers, crew, tackle, apparel, furniture, provisions, stores and fuel. 137
137
138
139
140
141

**Prosecution of Voyages** 8. The Captain shall prosecute his voyages with due despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and agency, and Charterers are to perform all cargo handling at their expense under the supervision of the Captain, who is to sign the bills of lading for cargo as presented in conformity with mate's or tally clerk's receipts. However, at Charterers' option, the Charterers or their agents may sign bills of lading on behalf of the Captain always in strict conformity with mate's or tally clerk's receipts see clause 92. All bills of lading shall be without prejudice to this Charter and the Charterers shall indemnify the Own- 142
143
144
145
146
147
148
149
150
151

**Bills of**



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

**Lading**
ers against all consequences or liabilities which may arise from any inconsistency between this Charter and any bills of lading or waybills, signed by the Charterers or their agents or by the Captain at their request.

**Conduct of Captain**
9. If the Charterers shall have reason to be dissatisfied with the conduct of the Captain or officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments. See clause 78.

**Supercargo and Meals**
10. The Charterers are entitled to appoint a supercargo, who shall accompany the vessel at his own risk and expense who is to sign standard LOI and see that voyages are prosecuted with due despatch. He is to be furnished with free accommodation and same fare as provided for Captain's table, Charterers paying at the rate of........................................per day. Owners shall victual pilots and customs officers, and also, when authorized by Charterers or their agents shall victual tally clerks, stevedore's foreman, etc., Charterers paying at the rate of lumpsum U.S. $ 1,000 per month, pro rata including communications, cable, email meal for all such victualing.

**Sailing Orders and Log**
11. The Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the Captain shall keep full and correct deck and engine logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs, shewing the course of the vessel, distance run, and the consumption of fuel. See clause 74.

**Ventilation**
12. The Captain shall use diligence in caring for the natural ventilation of the cargo.

**Continuation**
13. The Charterers shall have the option of continuing this Charter for a further period of...............................................

14. If required by Charterers, time shall not commence before 0700 May 2009.......................................and should vessel not have given written notice of readiness latest by 2359 LT Hours of 15th May 2009 otherwise standard Baltime Cancelling clause to apply.................................................................................but not later than ...........P.M. Charterers or their agents shall have the option of cancelling this Charter at any time not later than the day of vessel's readiness. At delivery port or place, see clause 28.

**Off Hire**
15. In the event of the loss of time from deficiency and/or default and/or strike of officers or crew or deficiency of stores, fire, breakdown of, or damage to, hull, machinery or equipment, grounding, detention by average accidents to ship or cargo unless resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or painting bottom, or by any other similar cause preventing the full working of the vessel, the payment of hire and overtime, if any, shall cease for the time thereby lost. See clause 65, 67, 68 Should the vessel deviate, or put back during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident to the cargo, the hire is to be suspended from the time of her deviating or putting back until she is again in the same or equidistant position from the destination and the voyage resumed therefrom. Plus the port charges, pilotages and other expenses directly related to the off hire Charterers option to add any off hire time to the maximum duration of the charter. All fuel used by the vessel while off hire shall be for Owners' account. In the event of the vessel being driven into port or to anchorage through stress of weather, trading to shallow harbors or to rivers or ports with bars, any detention of the vessel and/or expenses resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence thereof, and all directly related extra expenses shall be deducted from the hire.

**Total Loss**
16. Should the vessel be lost money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

**Exceptions**
The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the seas, rivers, machinery, boilers and steam



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

navigation, and errors of navigation throughout this Charter, always mutually excepted. 208 209

**Liberties**  The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property. See clause 68. 210 211 212

**Arbitration**  17. Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision, or that of any two of them, shall be final and for the purpose of enforcing any award this agreement may be made a rule of the Court. The arbitrators shall be commercial men conversant with shipping matters. See Clause 50 for Arbitration. 213 214 215 216 217 218 218

**Lien**  18. The Owners shall have a lien upon all cargoes and all sub-hires sub-freights for any amounts due under this Charter, including general average contributions, and the Charterers shall have a lien on the ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the vessel. 219 220 221 222 223 224 225

**Salvage**  19. All derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and crew's proportion. See clause 66. 226 227 228

**General Average**  General average shall be adjusted, according to York-Antwerp Rules 1994-1974, as amended in London at such port or place in the United States as may be selected by the Owners and as to matters not provided for by these Rules, according to the laws and usage at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into United States money at the rate prevailing on the dates made and allowances for damage to repairs claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or bond and such additional security, as may be required by the Owners, must be furnished before delivery of the goods. Such cash deposit as the Owners or their agents may deem sufficient to cover additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if required, be made by the goods, shippers, consignees or owners of the goods to the Owners before delivery. Such deposit shall, at the option of the Owners, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the place of adjustment in the name of the adjuster pending settlement of the general average and refunds or credit balances, if any, shall be paid in United States money. 229 230 231 232 233 234 235 236 237 238 239 240 241 242 243 244 245 246 247

Charterers, Bunkers and hire not to contribute to general average. 248

**York Antwerp Rules**  Charterers shall assume that all bills of lading issued during the currency of this Charter will contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1974 and will include the "New Jason Clause" in per Clause 23. 249 250 251

**Drydocking**  20. The vessel was last drydocked ........................................ The Owners shall have the option to place the vessel in drydock during the currency of this Charter at a convenient time and place, to be mutually agreed upon between Owners and Charterers, for bottom cleaning and painting and/or repair as required by class or dictated by circumstances. If payment of hire shall be suspended upon deviation from Charterers' service the vessel is again placed at Charterers' disposal at a point not less favorable to the Charterers than when the hire was suspended. No drydocking except in case of emergency. (See Clause 99. Gangway watchman to be for Owners' account. If shore watching required, same to be paid by Charterers. Compulsory watchmen always for Charterers' account. 252 253 254 255 256 257 258 259 260 261 261

**Cargo Gear**  21. Owners shall maintain the cargo-handling gear of the ship which is as follows: see clause 39. ........................................ 262 263 264 265

providing gear (for all derricks or cranes) capable of lifting ..... tons by as described. 266



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

scribed. Owners shall also provide on the vessel power and electric lights on board for 267
night work free of expense to the Charterers, and same to be maintained in efficient working 267
order, lights as on 267
board, but all additional lights over those on board shall be at Charterers' 268
expense. The Charterers shall have the use of any gear on board the vessel, if 269
required by Charterers, the vessel shall work night and day and all cargo 270
handling gear shall be at Charterers disposal during loading and discharging. 271
In the event of disabled cargo handling gear, or insufficient power to operate 272
the same, the vessel to be considered to be off hire for that time in 273
actually lost to the Charterers and Owners to pay stevedore stand by charges 274
occasioned thereby. If required by the Charterers, the Owners to bear the 275
cost of hiring shore gear in lieu thereof. 276

**Stevedore
Stand-by**

22. In lieu of any overtime payments to officers and crew for work ordered 277
by Charterers or their agents, Charterers shall pay Owners $ ............ 278
per month or pro rata. Hire in inclusive of any overtime. 279

**Crew
Overtime**

23. The following clause is to be included in all bills of lading issued 280
hereunder: 281

**Clauses
Paramount**

This bill of lading shall have effect subject to the provisions of the 282
Carriage of Goods by Sea Act of the United States, the Hague Rules, or the 283
Hague-Visby Rules, as applicable, or such other similar national legislation as 284
may mandatorily apply by virtue of origin or destination of the bills of lading, 285
which shall be deemed to be incorporated herein and nothing herein con- 286
tained shall be deemed a surrender by the carrier of any of its rights or 287
immunities or an increase of any of its responsibilities or liabilities under said 288
applicable Act. If any term of this bill of lading be repugnant to said applicable 289
Act to any extent, such term shall be void to that extent, but no further. 290

This Charter is subject to the following clauses all of which are to be 291
included in all bills of lading issued hereunder: 292

If the ship comes into collision with another ship as a result of the 293
negligence of the other ship and any act, neglect or default of the master, 294
mariner, pilot or the servants of the carrier in the navigation or in the manage- 295
ment of the ship, the owners of the goods carried hereunder will indemnify the 296
carrier against all loss or liability to the other or non-carrying ship or her 297
owners insofar as such loss or liability represents loss of, or damage to, or any 298
claim whatsoever of the owners of said goods, paid or payable by the other or 299
non-carrying ship or her owners to the owners of said goods and set off, 300
recouped or recovered by the other or non-carrying ship or her owners as part 301
of their claim against the carrying ship or carrier. 302

The foregoing provisions shall also apply where the owners, operators 303
or those in charge of any ships or objects other than, or in addition to, the 304
colliding ships or objects are at fault in respect to a collision or contact. 305

**New
Both-
to-
Blame
Collision
Clause**

In the event of accident, danger, damage or disaster before or after 306
commencement of the voyage resulting from any cause whatsoever, whether 307
due to negligence or not for which, or for the consequences of which, the 308
carrier is not responsible, by statute, contract, or otherwise, the goods, ship- 309
pers, consignees, or owners of the goods shall contribute with the carrier in 310
general average to the payment of any sacrifices, losses, or expenses of a 311
general average nature that may be made or incurred, and shall pay salvage 312
and special charges incurred in respect of the goods. 313

**New
Jason
Clause**

If a salving ship is owned or operated by the carrier, salvage shall be 314
paid for as fully as if salving ship or ships belonged to strangers. Such deposit 315
as the carrier or his agents may deem sufficient to cover the estimated con- 316
tribution of the goods and any salvage and special charges thereon shall, if 317
required, be made by the goods, shippers, consignees or owners of the goods 318
to the carrier before delivery. 319

(a) No contraband of war shall be shipped. Vessel shall not be re- 320
quired, without the consent of Owners, which shall not be unreasonably 321
withheld, to enter any port or zone which is involved in a state of war, warlike 322
operations or hostilities, civil strife, insurrection or piracy whether there be a 323
declaration of war or not, where vessel, cargo or crew might reasonably be 324
expected to be subject to capture, seizure or arrest, or to a hostile act by a 325
belligerent power (the term "power" meaning any de jure or de facto authority 326

**War
Clauses**



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

or any purported government) organization maintaining naval, military or air forces. 327 328

(b) If such consent is given by Owners, Charterers will be chargeable provable additional cost of insuring vessel against hull-war risks in an amount equal to the value under her ordinary hull policy but not exceeding the valuation of In addition, Owners any purpose and Charterers will pay for war risk insurance on ancillary risks such as loss of bonus freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program vessel not be required to enter or remain at any such port or zone. 329 330 331 332 333 334 335 336

(c) In the event of the existence of the conditions described in (a) subsequent to the date of this Charter or while vessel is on hire under this Charter, Charterers shall, in respect of voyages of any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities. 337 338 339 340 341 342

Ice    24. The vessel shall not be required force ice or follow ice breakers or to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary Course of things the vessel will not be able on account of ice to safely enter and remain in the port or area or to get out after having completed loading or discharging. 343 343 344 345 346 347 348

Navigation    25. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The Owners shall remain responsible for the navigation of the vessel, acts of pilots and tug boats, insurance, crew, and all other similar matters, same as when trading for their own account. 349 350 351 352

Commissions    26. A commission of 1.25.........................percent is payable by the vessel and Owners to Apex Ship Management Pte Ltd ............................................. and 1.25 percent payable to Radiance Ship Management Pte Ltd ................. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter. 353 354 355 356 357

Address    27. An address commission of 2.5............................................percent is payable to Charterers ................................................................. 358 359 360

on hire earned and paid under this Charter. 361

Rider    Rider Clauses numbers 28 to 106 (both inclusive) .......................... as attached here to are incorporated in this Charter. 362 363 363 363 363 363 363 363 363 363

For and on behalf of    RIGHT SEA LIMITED    OCEAN TRANSPORT & SHIPPING (ASIA) PTE LTD

For and on behalf of Owners    Authorized Signature(s)    For and on behalf of Charterers    Ocean Transport & Shipping (Asia) Pte Ltd    Director

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

Rider of Suggested Additional Clauses

(None of these Clauses apply unless expressly agreed during the negotiation and enumerated in line 362)

<table>
<tr><td>Extension of Cancelling</td><td>28. If it clearly appears that, despite the exercise of due diligence by Owners, the vessel will not be ready for delivery by the cancelling date, and provided Owners are able to state with reasonable certainty the date on which the vessel will be ready, they may, at the earliest seven days before the vessel is expected to sail for the port or place of delivery, require Charterers to declare whether or not they will cancel the Charter. Should Charterers elect not to cancel, or should they fail to reply within seven days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date of readiness for delivery as notified by Owners shall replace the original cancelling date. Should the vessel be further delayed, Owners shall be entitled to require further declarations of Charterers in accordance with this Clause.</td><td>364<br>365<br>366<br>367<br>368<br>369<br>370<br>371<br>372<br>373<br>374</td></tr>
<tr><td>Grace Period</td><td>29. Where there is failure to make punctual and regular payment of hire, Charterers shall be given by Owners two three clear banking days (as recognised at the agreed place of payment) written notice to rectify the failure, and when so rectified within those two days following Owners' notice, the payment shall stand as regular and punctual. Payment received by Owners' bank after the original due date will bear interest at the rate of 0.1 percent per day which shall be payable immediately by Charterers in addition to hire.<br><br>At any time while hire is outstanding the Owners shall be absolutely entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof in respect of which the Charterers hereby indemnify the Owners and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account.</td><td>375<br>376<br>377<br>378<br>379<br>380<br>381<br>382<br>383<br>384<br>385<br>386<br>387</td></tr>
<tr><td>Cargo Claims</td><td>30. Damage to and claims on cargo shall be for Owners' account if caused by unseaworthiness or stowage, trimming of the vessel; but shall be for Charterers' account if<br>caused by handling and stowage, including stackage. Claims for storage ex ship shall be settled in accordance with the NYPE interclub agreement 1996 as amended thereof. Please also refer Clause 58.</td><td>388<br>389<br>390<br>391<br>392</td></tr>
<tr><td>War Cancellation</td><td>31. In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: The United States of America, the United Kingdom, France, the Union of Soviet Socialist Republics, the People's Republic of China ......................................................<br>......................................................<br>......................................................<br>or in the event of the nation under whose flag the vessel sails becoming involved in war (whether there be a declaration of war or not), either the Owners or the Charterers may cancel the Charter. Whereupon the Charterers shall redelivery the vessel to the Owners in accordance with Clause 4, if she has cargo on board, after discharge thereof at destination, or, if prevented under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 4 and except as aforesaid all other provisions of this Charter shall apply until redelivery.</td><td>393<br>394<br>395<br>396<br>397<br>398<br>399<br>400<br>401<br>402<br>403<br>404<br>405<br>406<br>407<br>408</td></tr>
<tr><td>War Bonus</td><td>32. Any war bonus to officers and crew due to vessel's trading or cargo carried shall be for Charterers' account.</td><td>409<br>410</td></tr>
<tr><td>Requisition</td><td>33. Should the vessel be requisitioned by the government of the vessel's flag during the period of this Charter, the vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be returned by Owners. The period during which the vessel is on requisition to the said government shall count as part of the period provided for in this Charter.<br>If the period of requisition exceeds ............. six ............. months, either party shall have the option of cancelling this Charter and no consequential claim may be made by either party.</td><td>411<br>412<br>413<br>414<br>415<br>416<br>417<br>418<br>419</td></tr>
<tr><td>On/Off hire</td><td>34. Prior to delivery and redelivery the parties shall each appoint sur-</td><td>420</td></tr>
</table>



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

Survey    veyors, for their respective accounts, who shall conduct joint on-hire/off-hire   421
surveys. A single report shall be prepared on each occasion and signed by   422
each surveyor, without prejudice to his right to file a separate report setting   423
forth items upon which the surveyors cannot agree. If either party fails to have   424
a representative attend the survey and sign the joint survey report such party   425
shall nevertheless be bound for all purposes by the findings in any report   426
prepared by the other party. On-hire survey shall be on Charterers' time and   427
off-hire survey on Owners' time. See Clause 53 in rider clauses   428

Stevedore Damage    35. Any damage caused by stevedores during the currency of this Charter   429
shall be reported by Captain to Charterers or their agents, in writing, within 24   430
hours of the occurrence or as soon as possible thereafter. The Captain shall   431
use his best efforts to obtain written acknowledgement by responsible parties   432
causing damage unless damage should have been made good in the mean   433
time.   434

Stevedore damages involving seaworthiness shall be repaired without   435
delay to the vessel after each occurrence in Charterers' time and shall be paid   436
for by the Charterers. Other minor repairs shall be done at the same time, but if   437
this is not possible, same shall be repaired while vessel is in drydock in   438
Owners' time, provided this does not interfere with Owners' repair work or by   439
vessel's crew at Owners' convenience. All costs of such repairs shall be for   440
Charterers' account. Any time spent in repairing stevedore damage shall be for   441
Charterers' account.   442

Charterers shall pay for stevedore damage whether or not payment   443
has been made by stevedores to Charterers.   444

36. Charterers shall have the privilege of flying their own house flag and   445
painting the vessel with their own markings. The vessel shall be repainted in   446
Owners' colors before termination of the Charter. Cost and time of such painting,   447
maintaining and repainting those changes effected by Charterers shall be for   448
Charterers' account.   449

37. Charterers shall have the benefit of any return insurance premium   450
receivable by Owners from their underwriters as and when received from   451
underwriters by reason of vessel being in port for a minimum period of 30 days   452
if on full hire for this period or pro rata for the time actually on hire.   453

38. The vessel shall be off hire during any time that on account of vessel's   454
non-compliance with government and/or state and/or provincial regulations   455
pertaining to water pollution. In cases where vessel calls at a U.S. port, Owners   456
warrant to have secured and carry on board the vessel a Certificate of Financial   457
Responsibility as required under U.S. law.   458

Charterers' Colors

Return Premium

This Charter Party is a computer generated copy of the ASBATIME (1981) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensor or and can be appropriate and not by the author.



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

### CLAUSE 39

**M/V "VINASHIN BAY"**

MV VINASHIN BAY
DWT/ GRT/ DWCC: 20,078 / 14,330 / abt 18,000
LOA / B: 165.45 / 25.0
BUILT YEAR: 2006
BULK CARRIER / SINGLE DECK
HO / HA: 06 / 06
CRAIN: 03 x 20MT x 18M
DEPTH/ DRFT: 12 / 7.8M
GRAIN: 25,526 CBM
SPEED: ABT 9 KTS

Owners guarantee SPEED ABT 9 KTS LADEN in good weather condition
At sea: FO (180CST): abt 15.5MT/ day and DO: abt 0.3MT/ day
At port (working): FO abt 2.2 MT/ day
Idle: + If output less than 120Kw: G/E will use DO abt 1.2MT /day
      + If output higher than 120Kw: G/E will use FO abt 2 MT/ day

=ADA, WOG=

Itinerary:
ETA CAI MEP: 26th Apr 09
ETCPL disch: 07th May 09
Estimated time of del: 08th May 09

1) Outreach of crane: Min/ Max is 3M / 18M (horizontal length from the crane to the hook, not from the ship's side)
2) Cranes can lift the grab 8-10MT weight, but pls be noted that max grab's height is 8M, pls hire accordingly.
3) Power vsl can supply: 380 V
4) Owrs confirm 3 cranes cover all 6 ho/ha.

### CLAUSE 40

ON DELIVERY VESSEL TO HAVE ON BOARD AN INTERNATIONAL TONNAGE CERTIFICATE USUAL INTERNATIONALY REQUIRED CERTIFICATE TO TRADE IN THE PORTS BERTH FIXED UNDER THIS CHARTER PARTY VALID FOR THE DURATION OF THIS CHARTER PARTY AND SUCH TONNAGE CERTIFICATE SHALL BE ACCEPTABLE BY THE LOCAL AUTHORITIES AT THE COUNTRIES OF CALL WITHIN THE TRADING LIMITS OF THIS CHARTER PARTY. SHOULD SUCH TONNAGE CERTIFICATE NOT BE ACCEPTABLE TO THE LOCAL AUTHORITIES AND/OR RESULT IN AN UP-LIFT IN PORT EXPENSES SHALL BE FOR OWNERS' ACCOUNT.

OWNERS ARE OBLIGED TO DELIVER AND KEEP THE VESSEL, HER CREW AND ANYTHING PERTAINING THERETO SUPPLIED WITH UP TO DATE AND COMPLETE CERTIFICATES, APPROVALS AND EQUIPMENT ENABLING THE VESSEL AND HER CREW TO CARRY THE CARGOES AS DIRECTED BY THE CHARTERERS, WITHIN PERMISSABLE TRADING LIMITS, EVEN WHERE SUCH CERTIFICATES, APPROVALS, EQUIPMENT AND FITTINGS BECOME NECESSARY BEFORE OR AFTER DELIVERY UNDER THIS CHARTER PARTY. IT IS THE RESPONSIBILITY OF THE MASTER AND THE OWNERS TO ARRANGE FOR ANY SPECIAL VACCINATION REQUIRED AT THE PORTS OF CALL AND TO KEEP ON BOARD CORRESPONDING VALID CERTIFICATES. FAILING WHICH, ANY TIME LOST AND ALL EXTRA EXPENSES TO BE FOR OWNERS ACCOUNT AND MAYBE DEDUCTED FROM HIRE. OWNERS' P AND I CLUB: LONDON STEAMSHIP

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

**CLAUSE 41**

NORMAL QUARANTINE TIME AND EXPENSE TO ENTER PORT FOR CHARTERERS' ACCOUNT, BUT ANY TIME OR DETENTION AND EXPENSES FOR QUARANTINE DUE TO PESTILENCE, ILLNESS ETC., OF THE VESSEL'S MASTER, OFFICERS AND CREW TO BE FOR OWNERS' ACCOUNT.

**CLAUSE 42**

OWNERS ARE TO BE RESPONSIBLE FOR ANY CONSEQUENCES OWING TO SMUGGLING BY VESSEL'S OFFICERS AND/OR CREW UNLESS IT IS CAUSED BY CHARTERERS EMPLOYEES AND/OR THEIR SERVANTS.

**CLAUSE 43**

VESSEL'S EQUIPMENT INCLUDING HOLD ACCESS ARRANGEMENTS SHALL COMPLY WITH THE REGULATIONS OF THE COUNTRIES TO WHICH THE VESSEL MAY TRADE. IF STEVEDORES, LONGSHOREMEN OR OTHER WORKMEN ARE NOT PERMITTED TO WORK DUE TO FAILURE OF MASTER AND/OR OWNERS AND/OR OWNERS' AGENTS TO COMPLY WITH THE AFOREMENTIONED REGULATIONS, THEN CHARTERERS MAY SUSPEND HIRE FOR THE TIME THEREBY LOST.

**CLAUSE 44**

OWNERS WARRANT THE VESSEL HAS CLEAR UNOBSTRUCTED HOLDS AND IS SUITABLE FOR GRAB DISCHARGING. CHARTERERS ARE TO HAVE THE PRIVILEGE OF USING BULLDOZERS IN VESSEL'S HOLDS, PROVIDED NOT EXCEEDING VESSEL'S TANKTOP STRENGTH. BULLDOZERS TO WEAR RUBBER WHELLS WHEN COMING INTO DIRECT CONTACT WITH VESSEL'S TANKTOPS.

**CLAUSE 45**

DELETED

**CLAUSE 46**

DELETED

**CLAUSE 47**

OWNERS TO GIVE 10/8/7/6/5/4/3/2/1 DAYS NOTICES OF DELIVERY.

**CLAUSE 48**

TIMECHARTERERS ALSO HAVE THE OPTION OF FLYING THEIR OWN OR SUB-CHARTERERS' HOUSE FLAG.

**CLAUSE 49**

ON DELIVERY VESSELS HOLDS TO BE CLEAN/DRY/SWEPT TO SURVEYORS SATIFACTION. CHARTERERS HAVE THE RIGHT TO CONDUCT HOSE TEST. INCASE VESSELS HATCH/HOLDS FAIL TEST/INSPECTION ON DELIVERY OR AT ANY TIME DURING THE CURRENCY OF THIS C/P, VESSEL TO BE OFFHIRE AND ANY EXTRA BUNKERS CONSUMED TO BE DEDUCTED FROM NEXT HIRE.



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

IN LIEU OF HOLD CLEANING ON REDELIVERY OF VESSEL, CHARTERERS TO PAY OWNERS USD 2,000 LUMPSUM.

**CLAUSE 50**

OWNERS WARRANT THE VESSEL IS GRAINFITTED IN ACCORDANCE WITH LATES SOLAS AND AMENDMENTS WITHOUT REQUIRING BAGGING/STRAPPING SECURING WHEN LOADED WITH A FULL CARGO OF BULK GRAIN. VESSEL HAS ON BOARD APPROVED TABLE OF HEELING MOMENTS FOR "FILLED HOLDS-ENDS UNTRIMMED" AND THUS HAS DISPENSATION FROM TRIMMING OF END SPACES. FURTHERMORE, VESSEL TO HAVE ON BOARD A VALID GARIN LOADING BOOKLET IN ACCORDANCE WITH SOLAS/IMO LATEST REGULATIONS.

**CLAUSE 51**

CHARTERERS ARE TO HAVE THE BENEFIT OF ANY RETURN INSURANCE PREMIUM RECEIVED FROM THE UNDERWRITERS, BY REASON OF VESSEL BEING IN PORT IDLE FOR A MINIMUM PERIOD OF THIRTY (30) DAYS, PROVIDED VESSEL IS ON-HIRE.

**CLAUSE 52**

A JOINT ON/OFF HIRE BUNKER AND CONDITION SURVEY IS TO BE CARRIED OUT. THE ON HIRE SURVEY TO BE CONDUCTED BY CHARTERERS AND OWNERS AND THE COST IS TO BE SPLIT EQUALLY BETWEEN THE 2 PARTIES.

OWNERS HAVE THE RIGHT TO APPOINT MASTER TO ACT AS OWNERS' SURVEYOR.

**CLAUSE 53**

CARGO EXCLUSIONS:
ALL DANGEROUS, INFLAMMABLE, INJURIOUS, HAZARDOUS AND CORROSIVE CARGOES, EXPLOSIVE OF ANY KIND INCLUDING BLASTING CAPS AND DETONATORS, BLACK POWDER, ARMS, AMMUNITIONS AND WAR MATERIAL OF ANY KIND, NUCLEAR FUEL OR SUBSTANCES OR RADIOACTIVE MATERIAL OF ANY KIND AND/OR THEIR WASTES, PETROLEUM OR ITS PRODUCTS (PETCOKE ALLOWED), NAPHTHA, TURPENTINE, MOTOR SPIRITS, ASPHALT, PITCH, TAR, AMMONIUM NITRATE, HARMFUL AND CORROSIVE FERTILIZERS, CALCIUM CARBIDE, FERRO SILICON, CALCIUM HYPOCHLORITE, BORAX IN BULK, CARBON BLACK, SCRAP OF ANY KIND, MOTOR BLOCKS AND TURNINGS, CREOSOTED GOODS OF ANY KIND, LIVE STOCK, COPRA, FISHMEAL, HIDES, QUICK LIME, SLUDGE ORE.

**CLAUSE 54**

VESSEL TO BE DELIVERED WITH MAX ABOUT 200 MTS IFO AND MAX ABOUT 80 MTS MDO AND TO BE REDELIVERED WITH BUNKERS REMAINING ON BOARD OF SAME QUANTITY.

CHARTERERS TO PAY FOR THE VALUE OF BUNKERS ON DELIVERY TOGETHER WITH FIRST HIRE PAYMENT AT CHARTER PARTY PRICES. CHARTERERS TO DEDUCT FROM LAST HIRE PAYMENT THE VALUE OF THE BUNKERS ON REDELIVERY AT CHARTER PARTY PRICES.

BUNKER PRICES TO BE AT COST USD 308/MT IFO AND USD 475/MT MDO PLUS USD 200 BARGING CHARGE SUPPLIED AT SINGAPORE.
SAME PRICES AT BOTH ENDS.

OCEAN TRANSPORT & SHIPPING (ASIA) PTE LTD



For and on behalf of
RIGHT SEA LIMITED
成 寶 有 限 公 司

Authorised Signature(s)

Director

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

ALL BUNKER SUPPLIED BY CHARTERERS TO BE IN ACCORDANCE WITH ISO 8217 2005(E) QUALITY AND TO COMPLY WITH THE REQUIREMENTS OF MARPOL 73/76 ANNEXE VI RELATING TO PERMISSIBLE SULPHUR CONTENT IN THE FUEL AND ITS SUITABLE FOR TRADING IN EACH

INTENDED GEOGRAPHICAL AREA. IF RESULTS SHOW WORSE QUALITY THAN THE ABOVE SPECIFICATIONS, THE CHARTERERS ARE TO BE RESPONSIBLE FOR ANY DAMAGE TO THE VESSEL'S ENGINES.

FURTHERMORE, OWNERS ARE NOT TO BE RESPONSIBLE FOR ANY UNDER PERFORMANCE/OVER CONSUMPTION OF THE VESSEL AS A RESULT THEREOF. THE CHARTERERS TO DEDUCT VALUE OF BUNKERS ON REDELIVERY FROM THE LAST HIRE PAYMENTS.

## CLAUSE 55

THE MASTER OR ONE OFFICER APPOINTED BY THE MASTER SHALL SUPERVISE STOWAGE OF THE CARGO AS WELL AS INSTRUCT ONE OF HIS OFFICERS TO SUPERVISE ALL LOADING, HANDLING AND DISCHARGE OF THE CARGO. HE IS TO FURNISH CHARTERERS WITH STOWAGE PLAN AND OTHER DOCUMENTS CUSTOMARILY USED, AS AND WHEN REQUIRED, ALL IN THE ENGLISH LANGUAGE.

## CLAUSE 56

DELETED

## CLAUSE 57

DELETED

## CLAUSE 58

THE CHARTERERS ARE NOT TO BE RESPONSIBLE FOR STEVEDORE OR OTHER DAMAGE TO THE VESSEL UNLESS MASTER:

A) ENDEAVORS TO OBTAIN WRITTEN ACKNOWLEDGEMENT OF RESPONSIBILITY FROM PARTY CONCERNED.

B) REPORTS DAMAGE TO CHARTERERS WITHOUT DELAY, BUT LATEST PRIOR SAILING FROM PORT OF OCCURRENCE, UNLESS HIDDEN DAMAGE WHICH TO BE REPORTED UPON COMPLETION OF DISCHARGE.

C) HAS JOINT SURVEY MADE ON BEHALF OF THE 3 PARTIES (OWNERS, CHARTERERS AND STEVEDORES) TO ESTABLISH THE EXTENT OF DAMAGE.

THE CHARTERERS, PROVIDED THE ABOVE CONDITION A), B) AND C) ARE MET, ARE TO BE ULTIMATELY RESPONSIBLE FOR FULFILLMENT OF ANY PAYMENT DUE TO OWNERS AND NOT RECEIVED FROM STEVEDORES. DAMAGES AFFECTING SEAWORTHINESS FOR WHICH CHARTERERS ARE RESPONSIBLE, ARE TO BE REPAIRED BY CHARTERERS AT THEIR TIME AND COST AT THE PLACE OF OCCURRENCE AND VESSEL TO REMAIN ON HIRE. DAMAGES NOT AFFECTING SEA/CARGO WORTHINESS TO BE REPAIRED DURING NEXT DRYDOCKING, UNLESS OTHERWISE MUTUAL AGREED.

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

**CLAUSE 59**

FIRST 15 DAYS HIRE AND VALUE OF BUNKERS REMAINING ONBOARD ON DELIVERY PAYABLE TO OWNERS 4 BANKING DAYS AFTER VESSEL DELIVERY, THEREAFTER EVERY 15 DAYS IN ADVANCE.

HIRE TO BE PAID TO:-

Name of Bank: ABN AMRO Bank N.V., Hong Kong Branch
Address: 14/F Lincoln House, Taikoo Place 979 King's Road, Quarry Bay, Hong Kong
USD Account No.: 6843980
Swift Code: ABNAHKHH
Beneficiary Name: Right Sea Ltd

**CLAUSE 60**

NOTWITHSTANDING THE CONTENTS OF CLAUSES 4 AND 5, THE CHARTERERS MAY WITHHOLD FROM CHARTER HIRE DURING THE PERIOD OF THIS CHARTER PARTY SUCH UNDISPUTED AMOUNTS DUE FOR OFF-HIRE, AS WELL AS DEDUCT FROM THE LAST PAYMENT(S) OF CHARTER HIRE THE ESTIMATED COST OF BUNKERS REMAINING ON BOARD ON REDELIVERY AND THE ESTIMATED COST OF BUNKERS REMAINING ON BOARD ON REDELIVERY AND THE ESTIMATED EXPENSES, NOT EXCEEDING USD1,000 PER PORT, INCLUDING CANAL(S), INCURRED BY CHARTERERS FOR OWNERS' ACCOUNT, NOTWITHSTANDING THAT VOUCHES MAY NOT HAVE REACHED CHARTERERS FOR SUBMISSION TO OWNERS AT THAT TIME.

CHARTERERS MAY ALSO DEDUCT ADDRESS COMMISSION.

**CLAUSE 61**

REFERRING TO LINES 119 TO 122; WHERE THERE IS ANY FAILURE TO MAKE PUNTUAL AND REGULAR PAYMENT INCLUDING THE FIRST HIRE PAYMENT AND DELIVERY BUNKER COST, DUE TO WEEKENDS OR OMISSION OF CHARTERERS EMPLOYEES, BANKERS OR AGENTS OR OTHERWISE, FOR ANY REASON WHERE THERE IS ABSENSE OF INTENTION TO FAIL TO MAKE PAYMENT AS SET OUT, CHARTERERS SHALL BE GIVEN BY OWNERS 3 BANK WORKING DAYS NOTICE TO RECTIFY THE FAILURE AND WHERE SO RECTIFIED, THE PAYMENT SHALL STAND AS PUNCTUAL AND REGULAR PAYMENT.

**CLAUSE 62**

THE VESSEL TO USE OWNERS' BILL OF LADING OR BILLS OF LADING APPROVED BY CHARTERERS AND/OR SUB-CHARTERERS, WHICH TO INCLUDE NEW BOTH-TO-BLAME COLLISION CLAUSE, NEW JASON CLAUSE, CLAUSE PARAMOUNT, P AND I BUNKERING CLAUSE AND BALTIME 1939 WAR RISK CLAUSE DURING THE PERIOD OF THE CHARTER.

THE MASTER IS TO AUTHORIZE, IN WRITING, CHARTERERS OR THEIR APPOINTED AGENTS TO SIGN BILLS OF LADING AND BEHALF OF MASTER IN ACCORDANCE WITH MATES RECEIPTS.

IN THE BILLS OF LADING ARE NOT AVAILABLE AT THE DISCHARGING PORT OWNERS/MASTER TO RELEASE ENTIRE CARGO WITHOUT PRESENTATION OF ORIGINAL BILL(S) OF LADING AND CHARTERERS TO ISSUE SINGLE LETTER OF INDEMNITY (LOI) IN OWNERS P&I CLUB FORMAT, SIGNED BY CHARTERERS AND FAXED TO OWNERS ALONGWITH A CLEAR AND LEGIBLE COPY OF THE CORRESPONDING SIGNED BILLS OF LADING FOR OWNER'S VERIFICATION.



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

**CLAUSE 63**

OWNERS GUARANTEE THE VESSEL IS COVERED ON FULL TERMS AND FOR THE HULL AND MACHINERY VALUE OF USD16.2 MILLION (INCLUDING INCREASED VALUE) FOR FULL INSURANCE DURING THE WHOLE PERIOD OF THIS CHARTER INCLUDING TOTAL OR CONSTRUCTIVE TOTAL LOSS AND THAT THE VESSEL ENTERED AND SHALL REMAIN FOR THE DURATION OF THE CHARTER IN P AND I CLUB: LONDON STEAMSHIP. CHARTERERS TO HAVE THE BENEFIT OF OWNERS P AND I CLUB COVER AS FAR AS CLUB RULES PERMIT.

LIABILITIES FOR CARGO CLAIMS INCLUDING SHORT LOADING OF CARGO SHALL BE SETTLED IN ACCORDANCE WITH THE NEW YORK PRODUCE EXCHANGE INTERCLUB AGREEMENT 1996 (AS AMENDED).

**CLAUSE 64**

WITH THE CONTEXT OF THIS CHARTER PARTY, GOOD WEATHER CONDITIONS ARE UNDERSTOOD TO MEAN WINDS MAXIMUM BEUFORT FORCE 4 (MAXIMUM 16 KNOTS) AND/OR DOUGLAS SEA STATE 3 (3-5 FEET). WEATHER REPORTS TO BE TAKEN FROM THE VESSEL'S DECK LOG AND FROM THE REPORTS BY INDEPENDENT WEATHER ROUTING SERVICES SUCH AS OCEAN ROUTES. IN THE EVENT OF CONSISTANT DISCREPANCIES BETWEEN THE TWO SOURCES THEN THE AVERAGE FIGURE BETWEEN INDEPENDENT WEATHER ROUTING SERVICE AND VESSEL'S DECK LOG TO BE TAKEN AS RULING AND BINDING ON BOTH PARTIES.

**CLAUSE 65**

IF DURING THE CURRENCY OF THIS CHARTER, THERE IS ANY DEVIATION OR ANY LOSS OF TIME WHATSOVER CAUSED BE SICKNESS OF OR ACCIDENT TO CREW OR ANY PERSON ON BOARD THE VESSEL (OTHER THAN SUPERCARGO TRAVELLING UNDER CHARTERERS' AUSPICES) OR ANY PERSON(S) UNDER THE CHARTERERS' ORDERS OR REPRESENTING THE CHARTERERS IN ANY WAY, HIRE SHALL NOT BE PAID FOR THE TIME SO LOST AND THE COST OF EXTRA BUNKER CONSUMED AND ANY OTHER EXTRA EXPENSES INCURRED SHALL BE FOR THE OWNERS' ACCOUNT.

**CLAUSE 66**

IN THE EVENT OF VESSEL DEVIATING (WHICH EXPRESSION INCLUDES PUTTING BACK OR PUTTING INTO ANY PORT OTHER THAN TO WHICH SHE IS BOUND UNDER THE INSTRUCTIONS OF CHARTERERS), FOR ANY CAUSE OR FOR ANY PURPOSE WHICH WOULD RESULT IN PAYMENT OF HIRE BEING SUSPENDED UNDER THE PROVISION OF THIS CHARTER, NO HIRE SHALL, IN ANY CASE, BE PAYABLE AS FROM THE COMMENCEMENT OF DEVIATION UNTILL THE TIME WHEN VESSEL IS AGAIN READY AND IN EFFICIENT STATE TO RESUME HER SERVICE FROM EQUIVALENT OR EQUIDISTANT POSITION AT WHICH THE DEVIATION COMMENCED. IN THE EVENT OF THE VESSEL, FOR ANY CAUSE OR FOR ANY PURPOSE AS AFORESAID, PUTS INTO ANY PORT OTHER THAN THE PORT FOR WHICH SHE IS BOUND UNDER THE INSTRUCTIONS OF THE CHARTERERS, THE PORT CHARGES, PILOTAGE AND OTHER EXPENSES AT SUCH PORT SHALL BE BORNE BY THE OWNERS.

THE VESSEL SHALL HAVE THE LIBERTY TO DEVIATE FOR THE PURPOSE OF SAVING LIFE AND/OR PROPERTY AND TO ASSIST VESSELS IN DISTRESS. SUCH OPERATIONS NOT TO BE DEEMED A DEVIATION BUT ALL SALVAGE CONTRIBUTION THUS PAYABLE TO VESSEL TO BE EQUALLY DIVIDED WITH CHARTERERS AFTER PROPER DEDUCTION OF EXPENSES IF ANY (INCLUDING CAPTAIN AND CREW SHARE INCURRED IN THIS RESPECT).



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

**CLAUSE 67**

IN THE EVENT OF VESSEL BEING DENIED OR RESTRICTED IN THE USE OF PORT AND/OR LOADING AND/OR DISCHARGING FACILITIES OR SHORE LABOR AND/OR TUG OR PILOTAGE ASSISTANCE BECAUSE OF THE VESSEL'S FLAG OR OWNERSHIP OR MANAGEMENT OR THE WAGES OF THE CONDITIONS OF EMPLOYMENT OF HER OFFICERS AND/OR CREW OWNERSHIP OF MANAGEMENT OR BECAUSE OF THE PREVIOUS TRADING OF THE VESSEL OR ANY OTHER VESSEL AS AFORESAID, HIRE SHALL CEASE FOR THE TIME THEREBY LOST.

IF THE VESSEL REMAINS IDLE FOR 30 CONSECUTIVE DAYS BECAUSE OF ANY OF THE ABOVE MENTIONED CAUSES, CHARTERERS SHALL HAVE THE RIGHT TO CANCEL THE BALANCE OF THE CHARTER WITHOUT PREJUDICE TO ANY CLAIM THEY MAY OTHERWISE HAVE ON THE OWNERS, PROVIDED NO CARGO ON BOARD.

**CLAUSE 68**

SHOULD THE VESSEL BE ARRESTED DURING THE CURRENCY OF THIS CHARTER AT THE SUIT OF ANY PERSON HAVING OR PURPORTING TO HAVE A CLAIM AGAINST OR ANY INTEREST IN THE VESSEL, HIRE UNDER THIS CHARTER SHALL NOT BE PAYABLE IN RESPECT OF ANY PERIOD WHILST THE VESSEL REMAINS UNDER ARREST AND IS NOT AT FULL DISPOSAL OF THE CHARTERERS OR REMAINS UNEMPLOYED AS THE RESULT OF SUCH ARREST AND THE OWNERS SHALL REIMBURSE TO THE CHARTERERS AND EXPEDITURES WHICH THEY MAY INCUR UNDER THIS CHARTER IN RESPECT OF ANY PERIOD IS PAYABLE.

SUCH REIMBURSEMENT IS HOWEVER, LIMITED TO DIRECT EXPENDITURE IN RESPECT OF THE VESSEL NOT BEING AT THE CHARTERERS' DISPOSAL E.G STANDBY TIME, WAREHOUSING, ETC., AND NOT FOR THE DIRECT CONSEQUENTIAL EXPENSE WHICH THE CHARTERERS MAY INCUR. THIS CLAUSE SHALL NOT APPLY SHOULD THE ARREST BE CAUSED THROUGH ANY FAULT OF THE PART OF THE CHARTERERS, THEIR SERVANTS OR AGENTS.

**CLAUSE 69**

ANY EXTRA WAR RISK PREMIUM DUE TO VESSEL TRADING IRAQ OR OTHER WAR RISK AREA TO BE CHARTERERS ACCOUNT WHICH TO BE COVERED BY CHARTERERS THROUGH THEIR UNDERWRITERS.

**CLAUSE 70**

OWNERS TO APPOINT THEIR OWN AGENTS TO ATTEND ALL OWNERS' MATTERS SUCH AS DELIVERY, REDELIVERY, GENERAL AVERAGE, HOSPITALIZATION, SUPPLY OF STORES AND PROVISIONS ETC. OVER MINOR HUSBANDRY MATTERS SUCH AS HANDLING CREW MAIL, REPATRIATIONS OF CREW, POSTAGE, PASSING TELEXES, PURCHASING CHARTS AND PASSING CASH ADVANCES TO THE MASTER, CHARTERERS AGREE THAT THEIR AGENTS WILL HANDLE SAME FREE OF AGENCY FEES WITH OWNERS PAYING ACTUAL COST INVOLVED. CHARTERERS TO COOPERATE IN AGENCY NEGOTIATIONS SHOULD OWNERS ELECT TO USE CHARTERERS' AGENTS, BUT ALL BILLINGS TO BE DIRECT BETWEEN OWNERS AND AGENTS. SHOULD CHARTERERS PAY OWNERS' BILLING BY MISTAKE, SAME TO INCUR COMMISSION AND SHALL BE DEDUCTED FROM THE HIRE.

**CLAUSE 71**

TRADING EXCLUSIONS:
VESSEL TO ALWAYS TRADE VIA SAFE PORT(S)/BERTH(S)/ANCHORAGE(S), ALWAYS AFLOAT, ALWAYS WITHIN INSTITUTE WARRANTY LIMITS (IWL).



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CHARTER, THE CHARTERERS WARRANT THAT THE VESSEL SHALL NOT TRADE IN THE FOLLOWING PLACES:

RED SEA, SOMALIA, SRI LANKA, AUSTRALIA, CAMBODIA, NORTH KOREA, PACIFIC, ANGOLA, ETHIOPIA, HAITI, ISRAEL, JAPAN, ERITREA, WAR AND WAR LIKE ZONES.

THE CONWARTIME 1993 AND ANY CONSEQUENT AMENDMENT IS DEEMED INCORPORATED IN THIS CHARTER AND ALL BILLS OF LADING ISSUED HEREUNDER.

**CLAUSE 72**

DELIVERY AND REDELIVERY TIMES TO BE ADJUSTED TO GREENWICH MEAN TIME (GMT) SEE ALSO LINES 179 – 183.

**CLAUSE 73**

TO THEIR BEST OF THEIR KNOWLEDGE OWNER WARRANT THAT THE VESSEL AND/OR OWNERS AND/OR ANY OTHER VESSELS UNDER THE SAME OWNERSHIP AND/OR MANAGEMENT IS NOT BLACKLISTED BY THE ARAB COUNTRIES NOR ANYWHERE ALSO WITHIN THE AGREED TRADING LIMITS.

**CLAUSE 74**

CHARTERERS SHALL FURNISH THE MASTER WITH ALL REQUISITE INTRUCTIONS AND SAILING INSTRUCTIONS, IN WRITING OR BY TELEGRAM AND THE MASTER SHALL KEEP A FULL AND CORRECT LOG ABSTRACT OF THE VOYAGE OR VOYAGES, SHOWING INTERALIA, THE COURSE OF THE VESSEL AND DISTANCE RUN AND THE CONSUMPTION OF FUEL OIL, WHICH IS TO BE PATENT TO CHARTERERS OR THEIR AGENTS, A TRUE COPY OF WHICH IS TO BE SENT TO CHARTERERS FROM EACH PORT OF CALL ON THE VOYAGE AND IMMEDIATELY AFTER COMPLETION OF THE VOYAGE, TOGETHER WITH ANY OTHER INFORMATION WHICH THE MASTER DEEMS NECESSARY.

**CLAUSE 75**

THE FOLLOWING SERVICES IN RESPECT OF LOADING AND DISCHARGING OPERATIONS FROM OFFICERS AND CREW ARE INCLUDED IN THE HIRE, SUBJECT TO UNION REGULATIONS, WEATHER AND LOCAL REGULATIONS PERMITTING :

- RAISING AND LOWERING OF GANGWAYS IN PREPARATION FOR THE LOADING AND DISCHARGING.
- OPENING AND CLOSING OF HATCHES IN PREPARATION FOR AND DURING LOADING AND DISCHARGE.
- SHIFTING VESSEL DURING LOADING AND DISCHARGING AND SHIFTING BERTH, WARPING, DOCKING AND UNDOCKING.
- BUNKERING
- OFFICERS AND CREW TO SHAPE UP VESSEL'S HATCHES PRIOR TO ARRIVAL AT LOADING AND/OR DISCHARGING PLACES SO AS TO IMMEDIATELY COMMENCE LOADING/DISCHARGING OPERATIONS.
- REMOVING AND REPLACING BEAMS IN PREPARATION FOR LOADING AND DISCHARGING.
- SUPERVISION OF LOADING AND DISCHARGING OPERATIONS.
- ALL OVERTIME OF THE OFFICERS AND CREW.

ABOVE SERVICES SHALL BE CONSIDERED AS MINIMUM AND SHALL IN NO WAY BE CONSTRUED AS AN ALTERNATIVE TO OR REDUCTION IN THE STANDARD OF SERVICES FROM OFFICERS AND CREW REQUIRED UNDER THIS CHARTER PARTY.



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

**CLAUSE 76**

CHARTERERS MAY SUPPLY OCEAN ROUTES OR SIMILAR INTERNATIONAL RECOGNIZED AGENT EXCEPT A.W.T WHICH TO BE EXCLUDED ADVICE TO THE MASTER DURING VOYAGES SPECIFIED BY THE CHARTERERS. THE MASTER TO COMPLY WITH THE REPORTING PROCEDURE OF THE ROUTING SERVICE SELECTED BY THE CHARTERERS. IN THE EVENT OF CONTINUOUS DISCREPANCIES BETWEEN MASTER'S LOG AND ROUTING SERVICES' FIGURES, THEN THE AVERAGE FIGURE BETWEEN THE TWO TO BE FINAL AND BINDING ON BOTH PARTIES.

**CLAUSE 77**

CHARTERERS HAVE THE RIGHT TO DESPATCH A REPRESENTATIVE/SUPERCARGO TO SHIP'S LAST PORT OF CALL PRIOR TO DELIVERY UNDER THIS CHARTER FOR SUPERFICIAL INSPECTION AND TO INFORM MASTER OF UPCOMING EMPLOYMENT. OWNERS AGREE TO ACCOMMODATE CHARTERERS' REPRESENTATIVE OF SAME TO SIGN OWNERS INDEMNITY FOR ONBOARD.

**CLAUSE 78**

CHARTERERS SHALL HAVE THE OPTIONS TO WATER TEST HATCHES AS WELL AS PRESURE TEST BALLAST TANKS AS AND WHEN REQUIRED, AS MEANS OF ESTABLISHING VESSEL'S READINESS TO LOAD CHARTERERS INTENDED CARGO. ANY SUCH TEST IS TO BE FOR THE CHARTERERS' TIME AND EXPENSE.

**CLAUSE 79**

PROVISIONS MADE UNDER CLAUSE 9 NOT TO AFFECT CHARTERERS' RIGHT TO ADVANCE ANY CLAIM OR REQUIRE ARBITRATION UNDER CLAUSE 17 OF ANY DISPUTE REGARDING THE CONDUCT OF THE MASTER IN THE PROSECUTION OF HIS VOYAGES AND IN CARRYING OUT THE ORDERS AND DIRECTIONS OF THE CHARTERERS.

**CLAUSE 80**

THIS CHARTER PARTY IS TO BE GOVERNED BY AND CONTRUED IN ACCORDANCE WITH ENGLISH LAW. SHOULD ANY DISPUTE ARISE BETWEEN OWNERS AND THE CHARTERERS, THE MATTER IN DISPUTE SHALL BE REFERED TO 3 PERSONS IN LONDON, ONE TO BE APPOINTED BY EACH OF THE PARTIES HERETO AND THE THIRD BY THE TWO SO CHOSEN. THEIR DECISION OR THAT OF ANY TWO OF THEM SHALL BE FINAL AND FOR THE PURPOSE OF ENFORCING ANY AWARD, THIS ARGEEMENT MAY BE MADE A RULE OF THE COURT. THE ARBITRATORS SHALL BE COMMERCIAL MEN CONVERSANT WITH SHIPPING MATTERS. IF EITHER OF THE APPOINTED ARBITRATORS REFUSES TO ACT OR IS INCAPABLE OF ACTING OR DIES, THE PARTY WHO APPOINTED HIM MAY APPOINT A NEW ARBITRATOR IN HIS PLACE. IF ONE PARTY FAILS TO APPOINT AN ARBITRATOR, EITHER BY WAY OF SUBSTITUTION AS AFORESAID OR ORIGINALLY WITHIN 7 CLEAR DAYS AFTER THE OTHER PARTY HAVING APPOINTED ITS ARBITRATOR AND HAS SERVED THE PARTY MAKING DEFAULT WITH NOTICE TO MAKE AN APPOINTMENT, THE PARTY WHO HAS APPOINTED AN ARBITRATOR IS ALLOWED TO APPOINT THAT ARBITRATOR TO ACT AS SOLE ONE, AND HIS AWARD SHALL BE BINDING ON BOTH PARTIES AS IF HE HAD BEEN APPOINTED BY CONSENT.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CHARTER PARTY, THE PARTIES AGREE THAT ALL ARBITRATIONS WHERE THE AMOUNT IN ISSUE IN THE DISPUTE(S) IS LESS THAN U.S. $ 50,000.00 SHALL BE CONDUCTED ACCORDING TO THE SMALL CLAIMS PROCEDURE 1989 (S.C.P.) OF THE LONDON MARITIME ARBITRATORS ASSOCIATION (AS AMENDED FROM TIME TO TIME).

IF AFTER COMMENCEMENT OF SUCH REFERENCE IS APPEARS ON REASONABLE GROUNDS, THAT THE SUMS IN ISSUE, IN ANY DISPUTE OR DISPUTES EXCEED U.S.$ 50,000.00, EITHER PARTY

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

SHALL BE ENTITLED TO REQUIRE IN WRITING THAT THE REFERENCED HENCEFORTH SHOULD PROCEED WITHOUT REGARD TO THE S.C.P PROVIDED THAT THERE IS NO PRIOR AGREEMENT (WHETHER IN THIS CHARTER PARTY OR NOT) TO REFER DISPUTE(S) TO A SOLE ARBITRATOR, EACH PARTY THEREUPON SHALL HAVE 7 DAYS TO APPOINT ITS ARBITRATOR UNDER THE ARBITRATION PROVISIONS SET OUT ALSEWHERE IN THIS CHARTER PARTY WITH S.C.P ARBITRATOR SITTING AS UMPIRE OR THIRD ARBITRATOR.

**CLAUSE 81**

DELETED

**CLAUSE 82**

DELETED

**CLAUSE 83**

THIS FIXTURE TO BE KEPT ABSOLUTELY PRIVATE AND CONFIDENTIAL AND NOT TO BE REPORTED BY ANY OF THE PARTIES INVOLVED.

**CLAUSE 84**

ALL TAXES AND DUES ON VESSEL AND/OR CARGO AND/OR FREIGHT ARISING OUT OF CARGOES CARRIED OR PORTS VISITED UNDER THIS CHARTER PARTY SHALL BE FOR CHARTERERS' ACCOUNT.

**CLAUSE 85**

CHARTERERS ARE NOT TO ISSUE OR CAUSE TO BE ISSUED BILLS OF LADINGS WHICH ARE SUBJECT TO HAMBURG RULES.

**CLAUSE 86 :- BULKER CARRIER SAFETY CLAUSE**

A) THE CHARTERERS SHALL INSTRUCT THE TERMINAL OPERATORS OR THEIR REPRESENTATIVES TO COOPERATE WITH THE MASTER IN COMPLETING THE IMO SHIP/SHORE SAFETY CHECKLIST AND SHALL ARRANGE ALL CARGO OPERATIONS STRICTLY IN ACCORDANCE WITH THE GUIDELINES SET OUT THEREIN.

B) IN ADDITION TO THE ABOVE AND NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY IN RESPECT OF LOADING/DISCHARGING RATES THE CHARTERERS SHALL INSTRUCT THE TERMINAL OPERATORS TO LOAD/DISCHARGE THE VESSEL IN ACCORDANCE WITH THE LOADING/DISCHARGING PLAN, WHICH SHALL BE APPROVED BY THE MASTER WITH DUE REGARD TO THE VESSEL'S DRAUGHT, TRIM, STABILITY, STRESS OR ANY OTHER FACTOR WHICH MAY AFFECT THE SAFETY OF THE VESSEL.

C) AT ANY TIME DURING OPERATIONS THE MASTER MAY, IF HE DEEMS IT NECESSARY FOR REASONS OF SAFETY OF THE VESSEL INTRUCT THE TERMINAL OPERATORS OR THEIR REPRESENTATIVES TO SLOW DOWN OR STOP THE LOADING OR DISCHARGING.

D) COMPLIANCE WITH THE PROVISIONS OF THIS CLAUSE SHALL NOT AFFECT THE COUNTING OF TIME.



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

**CLAUSE 87**

DELETED

**CLAUSE 88**

IN CASE OF LOADING/DISCHARGING STEEL PRODUCTS, OWNERS TO APPOINT A P AND I CLUB SURVEYOR TO PERFORM A PRELOADING/PREDISCHARGE SURVEY TO ASCERTAIN THE CONDITION OF THE CARGO PRIOR TO AND DURING LOADING/DISCHARGING. COST FOR SUCH SURVEY TO BE SPLIT EQUALLY BETWEEN OWNERS AND CHARTERERS.

**CLAUSE 89**

BIMCO STANDARD ISM CLAUSE FOR VOYAGE AND TIME CHARTER PARTIES FROM THE DATE OF COMING INTO FORCE OF THE INTERNATIONAL SAFETY MANAGEMENT (ISM) CODE IN RELATION TO THE VESSEL AND THEREAFTER DURING THE CURRENCY OF THIS CHARTER PARTY, THE OWNER SHALL PROCURE THAT BOTH THE VESSEL AND 'THE COMPANY' (AS DEFINED BY THE ISM CODE) SHALL COMPLY WITH THE REQUIREMENTS OF THE ISM CODE. UPON REQUEST, THE OWNERS SHALL PROVIDE A COPY OF THE RELEVANT DOCUMENT OF COMPLIENCE (DOC) AND SAFETY MANAGEMENT CERTIFICATE (SMC) TO CHARTERERS.

EXCEPT AS OTHERWISE PROVIDED IN THIS CHARTER, LOSS, DAMAGE, EXPENSE OR DELAY CAUSED BY FAILURE ON THE PART OF THE OWNERS OR 'THE COMPANY' TO COMPLY WITH THE ISM CODE SHALL BE FOR THE OWNERS' ACCOUNT.

**CLAUSE 90 - DOUBLE BANKING/LIGHTERAGE CLAUSE**

A) THE CHARTERERS SHALL HAVE THE RIGHT, WHERE AND WHEN IT IS CUSTOMARY AND SAFE FOR VESSELS OF SIMILAR SIZE AND TYPE TO DO SO, TO ORDER THE VESSEL TO GO, LIE OR REMAIN ALONGSIDE ANOTHER VESSEL OR ANY SIZE OR DESCRIPTION WHATSOEVER OR TO ORDER SUCH VESSELS TO COME AND REMAIN ALONGSIDE AT SUCH SAFE DOCK, WHARF, ANCHORAGE OR OTHER PLACE FOR TRANSHIPMENT, LOADING OR DISCHARGING OF CARGO AND/OR BUNKERING.

B) THE CHARTERERS SHALL PAY FOR AND PROVIDE SUCH ASSISTANCE AND EQUIPMENT AS MAY BE REQUIRED TO ENABLE ANY OF THE OPERATIONS MENTIONED IN THIS CLAUSE SAFELY TO BE COMPLETED AND SHALL GIVE THE OWNERS SUCH ADVANCE NOTICE AS THEY REASONABLE CAN OF THE DETAILS OF ANY SUCH OPERATIONS. NUMBER, TYPE AND POSITIONING OF FENDERS ALWAYS TO BE AT MASTER'S SATISFACTION.

C) WITHOUT PREJUDICE TO THE GENERALITY OF THE CHARTERERS' RIGHTS UNDER (A) AND (B), IT IS EXPRESSLY AGREED THAT THE MASTER SHALL HAVE THE RIGHT TO REFUSE TO ALLOW THE VESSEL TO PERFORM AS PROVIDED IN (A) AND (B) IF IN HIS REASONABLE OPINION IT IS NOT SAFE SO TO DO. MASTER MAY MOVE VESSEL AWAY OR ORDER TO OTHER VESSEL AWAY AT ANY TIME IF HE CONSIDERS CONDITIONS UNSUITABLE.

D) THE OWNER SHALL BE ENTITLED TO INSURE ANY DEDUCTIBLE UNDER THE VESSEL'S HULL POLICY AND THE CHARTERERS SHALL REIMBURSE THE OWNERS AND ADDITIONAL PREMIUM(S)

REQUIRED BY THE VESSEL'S UNDERWRITERS AND/OR THE COST OF INSURING ANY DEDUCTIBLE UNDER THE VESSEL'S HULL POLICY.

E) THE CHARTERERS SHALL FURTHER INDEMNIFY THE OWNERS FOR ANY COSTS, DAMAGE AND LIABILITIES RESULTING FROM SUCH OPERATION. THE VESSEL SHALL REMAIN ON HIRE FOR ANY TIME LOSS INCLUDING PERIODS FOR REPAIRS AS A RESULT OF SUCH OPERATION.

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

**CLAUSE 91 - OWNERS NAABSA CLAUSE**

NAABSA NOT PERMITTED UNDER THIS CP.

**CLAUSE 92**

HATCHES TO SEALED AFTER LOADING AND UNSEALED BEFORE UNLOADING IN PRESENCE OF CHARTERERS' REPRESENTATIVE(S) AT CHARTERERS' COST AND TIME AND OWNERS WILL NOT BE RESPONSIBLE FOR ANY SHORT LANDING.

**CLAUSE 93**

DELETED

**CLAUSE 94 - BOTTOM CLEANING CLAUSE**

IN THE VENT OF CHARTERERS ORDERING THE VESSEL TO PORT(S) WHERE THE VESSEL'S STAY IS EXTENDED FOR MORE THAN 20 (TWENTY) CONSECUTIVE DAYS OR TO LAY UP HAS CAUSED BOTTOM FOULING CHARTERERS TO PROVIDE UNDERWATER CLEANING AT THEIR TIME AND EXPENSE, OTHERWISE OWNERS DESCRIPTION OF THE VESSEL'S SPEED AND CONSUMPTION TO BE NULL VOID, EFFECTIVE FROM THE VESSEL'S DEPARTURE FROM SUCH PORT(S) UNLESS OR UNTILL SO CLEANED.

**CLAUSE 95**

DELETED

**CLAUSE 96**

REDELIVERY ON DROPPING LAST OUTWARD SEA PILOT ONE SAFE PORT OF INDIA-EAST AFRICA RANGE INCLUDING PG BUT EXCLUDING RED SEA AND SOMALIA SEA OR IN CHOPT REDELIVERY ONE SAFE PORT OF SOUTH EAST ASIA-CHINA RANGE ANY TIME DAY OR NIGHT FRIDAYS HOLIDAYS INCLUDED OR ANY TIME DAY OR NIGHT SUNDAYS AND HOLIDAYS INCLUDED.

**CLAUSE 97**

VESSEL IS ITF FITTED OR OTHER BONA FIDE TRADE UNION AGREEMENT

**CLAUSE 98**

VESSEL TO BE ALWAYS LEFT IN SEAWORTHY TRIM TO MASTER'S SATISFACTION DURING SAILING AND/OR SHIFTING BETWEEN ALL BERTHS/PORTS.

**CLAUSE 99 - DRYDOCK CLAUSE**

NO DRYDOCKING, EXCEPT IN CASE OF EMERGENCY.



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

### CLAUSE 100 – CANAL TRANSIT
DELETED

### CLAUSE 101 – FLAG RESTRICTIONS

OWNERS SHALL BE RESPONSIBLE IN THE EVENT OF LOST TIME, DELAY, AND/OR IMPOSSIBLITY OF OR RESTRICTIONS ON THE FULL WORKING OR EMPLOYMENT OF THE SHIP, INCLUDING BUT NOT LIMITED TO ANY ACTION WHATSOEVER TAKEN BY ANY THIRD PARTIES, AS A RESULT OF OR IN CONNECTION WITH THE COUNTRY OF REGISTRATION OF THE SHIP, HER FLAG, AND/OR THE TERMS AND CONDITIONS UPON WHICH THE CREW OF THE SHIP ARE ENGAGED OR EMPLOYED BY OWNERS. THE SHIP SHALL BE OFF HIRE FOR ANY TIME LOST AND ANY AND ALL DIRECTLY RELATED EXPENSES INCURED BY CHARTERERS AS A RESULT MAY BE DEDUCTED FROM HIRE. IN THE NORMAL COURSE OF TRADING THE VESSEL, IF CHARTERERS INCUR ADDITIONAL PORT EXPENSES AS A RESULT OF VESSEL'S FLAG, SAME IS TO BE FOR CHARTERERS ACCOUNT.

### CLAUSE 102 – QUARANTINE

OWNERS SHALL BE LIABLE FOR ANY DELAY IN QUARANTINE ARISING FROM THE MASTER, OFFICERS, OR CREW HAVING COMMUNICATION WITH THE SHORE AT ANY INFECTED AREA WITHOUT THE WRITEN CONSENT OF CHARTERERS OR THEIR AGENTS, ALSO FOR ANY LOSS OF TIME THROUGH DETENTION BY THE CUSTOMS OR OTHER AUTHORITIES CAUSED BY SMUGGLING OR OTHER INFRACTIONS OF LOCAL LAW ON THE PART OF THE MASTER, OFFICERS OR CREW. ANY TIME LOST BY SUCH CAUSES MAY BE DEDUCTED AS OFF-HIRE.

### CLAUSE 103 – SAFETY AND HEALTH REGULATIONS

OWNERS WARRANT THAT THE VESSEL SHALL BE IN POSSESSION OF THE NECESSARY CERTIFICATES TO COMPLY WITH ALL SAFETY AND HEALTH REGULATIONS AND ALL CURRENT REQUIREMENTS AT ALL PORTS OF CALL DURING THE CURRENCY OF THIS CHARTER, WITHOUT HINDRANCE OR DELAY.

### CLAUSE 104
DELETED

### CLAUSE 105

DELETED

### CLAUSE 106

OWNERS WARRANT THAT THE VESSEL IS ENTERED WITH THE PROTECTION AND INDEMNITY INSURER (NAME) FOR THE HULL COVERAGE AVAILABLE IN P AND I DIRECT COVERAGE FOR MARINE POLLUTIONS RISKS.

WHEN AN ESCAPE OR DISCHARGE OF OIL OR OTHER HAZADOUS SUBSTANCES OCCURS FROM THE VESSEL AND CAUSES OR THREATENS TO CAUSE POLLUTION DAMAGE, OR WHEN THERE IS THE THREAT OF AN ESCAPE OR DISCHARGE OF OIL OR OTHER HAZARDOUS SUBSTANCES (IE. A GRAVE AND IMMINENT DANGER OF THE ESCAPE OR DISCHARGE WHICH, IF IT OCCURRED, WOULD CREATE A SERIOUS DANGER OF POLLUTION DAMAGE), THEN OWNERS SHALL IMMEDIATELY UNDERTAKE SUCH MEASURE AS ARE REASONABLY NECESSARY TO PREVENT OR MINIMIZE SUCH DAMAGE OR TO REMOVE THE THREAT.

CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2009

OWNER SHALL KEEP CHARTERERS ADVISED OF THE NATURE OF ANY MEASURES TAKEN BY THEM, AND, IF TIME PERMITS, THE NATURE OF THE MEASURES INTENDED TO BE TAKEN BY THEM. IN THE EVENT OWNERS FAIL TO UNDERTAKE SUCH MEASURES, CHARTERERS MAY, AT THEIR OPTION, UPON NOTICE OWNERS TO OWNERS OR THE MASTER, DO SO THEMSELVES AND ANY MEASURES TAKEN BY CHARTERERS SHALL BE DEEMED TAKEN ON OWNER'S AUTHORITY AND AS OWNER'S AGENT AND SHALL BE AT OWNER'S EXPENSE EXCEPT TO THE EXTENT THAT ANY SUCH POLLUTION DAMAGE OR THREAT WAS CAUSED OR CONTRIBUTED TO BY CHARTERERS.

## CLAUSE 107 – BOTTOM FOULING

IF THE VESSEL'S SPEED CAPACITY IS REDUCED AS A RESULT OF THE BOTTOM BEING FOULEDBY THE REASON OF THE VESSEL BEING IN A PORT FOR A PERIOD IN EXCESS OF 30 DAYS, THE OWNERS ARE NOT TO BE RESPONSIBLE FOR REDUCTION IN SPEED OF THE VESSEL UP UNTILL SUCH TIME AS HER NEXT SCHEDULED DRYDOCK.

## CLAUSE 108 – DECK CARGO

CARGO ON DECK/HATCH COVER NOT TO BE ALLOWED, HOWEVER AT THE REQUEST OF THE CHARTERERS, OWNERS WILL CONSIDER THAT THE VESSEL SHALL CARRY A DECK LOAD, IF REQUIRED, IN ACCORDANCE WITH NORMAL MARINE PRACTICE, AND DECK LOAD WILL BE CONTROLLED BY STABILITY, SEAWORTHINESS AND STRENGTH OF THE VESSEL SUBJECT TO MASTER'S APPROVAL.

PRESSURE OF DECK CARGO PER SQUARE METRES SHALL NOT EXCEED STRESS ALLOWED PER BUILDER'S PLAN AND TOTAL WEIGHT OF DECK CARGO SHALL NOT AFFECT SAFE STABILITY OF THE VESSEL. DECK CARGO TO BE STOWED, LASHED AND SECURED TO MASTER'S SATISFACTION, AND IN ACCORDANCE WITH ALL APPROPRIATE REGULATIONS.

CARGO ON DECK/HATCH COVER IF ANY AT CHARTERERS' TIME/ EXPENSES/ RISKS IN ACCORDANCE WITH VESSEL'S DECK/ HATCH COVER STRENGTH. N VESSEL'S STABILITY AT MASTER'S DISCRETION AND ANY RISKS, CLAIMS, COSTS AND CONSEQUENCES ARISING FROM LOADING CARGO ON DECK/HATCH COVER TO BE FOR CHARTERERS ACCOUNT.

BS/L ISSUED COVERING SUCH CARGO SHALL BE CLAUSED AS FOLLOWING.

"SHIPPED ON DECK AT CHARTERERS' SHIPPERS' AND RECEIVERS' RISKS, EXPENSES AND RESPONSIBILITY WITHOUT LIABLILTY ON THE PART OF THE VESSEL OR HER OWNERS FOR ANY LOSS OR DAMAGE, EXPENSES OR DELAY HOWEVER CAUSED."

FURTHERMORE THE CHARTERERS TO PROTECT AND INDEMNIFY THE OWNERS AGAINST THIRD PARTIES CLAIMS WHICH MIGHT ARISE FROM SUCH REQUEST OF THE CHARTERERS. THE CHARTERERS TO TAKE OUT SATISFACTORY INSURANCE TO COVER THIS RISK AT THEIR EXPENSE AND OWNERS TO BE GIVEN A COPY OF SAME (STATING WHO ARE INSURERS AND TERMS OF INSURANCE).

CARGO TO BE LOAD/ DISCH MUST BE UNDER MASTER'S CARGO PLAN WHICH SAFETY AND STABILITY. (MASTER CAN REFUSE IF 1 HOLD EMPTY BUT OTHER HOLD RATHER FULL)

===== END =====



CHARTER PARTY OF MV "VINASHIN BAY" DATED APRIL 22ND, 2008

RIGHT SEA LIMITED

For and on behalf of
**RIGHT SEA LIMITED**
畋 瀚 有 限 公 司

_Authorized Signature(s)_

FOR AND ON BEHALF OF OWNERS
RIGHT SEA LTD

OCEAN TRANSPORT & SHIPPING (ASIA) PTE LTD

Director

FOR AND ON BEHALF OF CHARTERERS
OCEAN TRANSPORT & SHIPPING
(ASIA) PTE LTD

## PARTICULAR

| | | | | | |
|---|---|---|---|---|---|
| 1 | Ship's Name: | Vinashin Bay | 26 | Class Number | VR 062097 |
| 2 | Flag | VIET NAM | 27 | IMO No. | 9426604 |
| 3 | Port of Registry | HAI PHONG | 28 | Hull No. | H170B |
| 4 | Signal Letter | 3WTO | 29 | Winches | Flutek Kawasaki-Korea |
| 5 | When Built | 2008 | 30 | Cranes 3 sets | T/S crane: SWL 20 MT (Max/Min)18(3 M) |
| 6 | Builders | Pha Rung Shipyard | | | Electric-Hydraulic Crane |
| 7 | Gross Tonnage | 14,398 GRT | 31 | Main Engine | Quangzhou Diesel, B320ZCJ-8 |
| 8 | Net Tonnage | 5,207 | | | Brake Horse Power | 3000 HP x 2 set |
| 9 | Displacement | | | | Speed | 525 rpm |
| 10 | Dead Weight | | | | Maker | Quangzhou Shipbuilding |
| 11 | Draft / TPC | 7.8 M / 24,398 | | When Made | 2006 |
| 12 | Speed Service | abt 8.0 Knots laden in good weather condition | 32 | Generator Engine (2 Set) | Yanmar Model: 6N18L-EV |
| 13 | F.O Consumption | FO: 15.5 MT / day at sea | | | Power: 385V/60Hz 550KW x 720 rpm |
| 14 | IFO 180 Cst. | FO: 2.2 MT/day in Port, working | 33 | Propeller | FO180Cst (RME25) or D.O (DMB) |
| 15 | Idle - GE will use DO | used if output less than 120kw | | | 285 rpm x 2 sets |
| 16 | 1.2MT/day | used if output higer than 120kw | 34 | Number of blade | 4 Blades |
| 17 | LOA / LBP | 165.45M / 155.00M | | Material | Bronze |
| 18 | Breadth / Depth | 25.00 M / 12.00M | 35 | Diameter | |
| 19 | Bulk Heads | Seven (07) | | Pitch | |
| 20 | Cargo Holds: (M) | Cargo Hatches: (M) | | Maker | |
| 21 | No.1: 19.8 x 24.45 x 10.4 | 13.6 x 12.45 x 2.10 | 34 | Bow Thruster | |
| 22 | No.2: 20.3 x 25.0 x 10.4 | 15.4 x 12.45 x 2.10 | | Diameter | 1300 mm |
| 23 | No.3: 20.3 x 25.0 x 10.4 | 15.4 x 12.45 x 2.10 | 35 | Boiler | Scotch Type |
| 24 | No.4: 18.5 x 25.0 x 10.4 | 14.7 x 12.45 x 2.10 | | Number | 1set |
| 25 | No.5: 20.3 x 25.0 x 10.4 | 15.4 x 12.45 x 2.10 | | Heating Surface | |
| 26 | No.6: 19.06 x 25.0 x 10.4 | 14.7 x 12.45 x 2.10 | | Working Pressure | 7kg/cm2 |
| | | | | Fuel | 1.0 MT Fuel oil. |
| 19 | Capacity (Grain) Total | 25,162.3 M3 (about) | 36 | Maker | |
| | + No.1: 3,843.8 M3 | + No.4: 4,176.6 M3 | | When Made | Aalborg-China |
| | + No.2: 4,336.1 M3 | + No.5: 4,336.5 M3 | | | 2007 |
| | + No.3: 4,329.6 M3 | + No.6: 4,100.7 M3 | 37 | Fire Fighting System | CO2 System |
| 20 | Ballast Tanks | 11,383.4 M3 | 38 | Life Boat | 25 persons x 2sets |
| 21 | Fresh water Tanks | 220.8 M3 | 39 | Navigation Equipment | Gyro compass, GPS, Radar x2 |
| 22 | Fuel Oil Tanks | C 766.7M3 (at 100% Volume) | | Communication | Inmarsat-C, MF/HF DSC, VHF |
| | | A 261.0M3 (at 100% Volume) | | | GMDSS A1+A2+A3 |
| | | Total : 1027.7M3 | 40 | Inmarsat No. | 4574114410 |
| 28 | Strength of tanktop | 17.00 MT / M2 | | Telephone / Fax No. | *870 76011162487761162488 |
| | Strength of hatch's cover | 3.40 MT / M2 | | | |
| | Strength of main deck | 3.00 MT / M2 | | | |

Exhibit 2

# RIGHT SEA LIMITED

**MV VINASHIN BAY / Ocean Transport & Shipping (Asia) - CP DD 22.04.09**

**HIRE STATEMENT**

| | | | | | |
|---|---|---|---|---|---|
| Delivered: | | 19/05/2009 01:00 GMT | | | |
| Hire to: | | 20/08/2009 20:30 GMT | | | |
| Total Days | | 93.8125 | | | |
| Rate per day | | 4,800.00 | | | |
| Commision, deductable | | 3.75% | | | |
| Hire | | 93.8125 days at USD | 4,800.00 | USD | 450,300.00 |
| Off-hire: Koh-Sichang<br>07th Jun 1630hrs LT - 08th Jun 2130hrs LT | | -1.20833 days at USD | 4,800.00 | USD | -5,799.98 |
| Under Performance Claims As Per WeatherNews Routing Report | | -2.45 days at USD | 4,800.00 | USD | -11,760.00 |
| Gross hire | | | | USD | 432,740.02 |
| Address commission | | -3.75% | | USD | -16,227.75 |
| Net hire | | | | USD | 416,512.27 |
| Bunkers on delivery | FO<br>DO | 249.56 MT at USD<br>37.79 MT at USD | 308.00<br>475.00 | USD<br>USD | 76,864.48<br>17,950.25 |
| Bunkers on re-delivery | FO<br>DO | -227.23 MT at USD<br>-75.36 MT at USD | 308.00<br>475.00 | USD<br>USD | -69,986.84<br>-35,793.63 |
| Bunkers off hire | DO | -1.44999 MT at USD | 475.00 | USD | -688.75 |
| Bunkers Over Consumed As per Weather Routing Report | FO<br>DO | -47.17 MT at USD<br>-11.66 MT at USD | 308.00<br>475.00 | USD<br>USD | -14,528.36<br>-5,538.50 |
| Entertain./Communic | | 92.60417 days at USD | 1000.00 | USD | 3,044.52 |
| ILOHC | | | 2000.00 | USD | 2,000.00 |
| Ownrs Expenses - Repair Cost At Koh-Sichang | | | | USD | -1,450.00 |
| Ownrs Expenses - Repair Cost At Koh-Sichang | | | | USD | -3,009.00 |
| On Hire Survey Fees 50% | | | | USD | -132.96 |
| TOTAL | | | | USD | 385,243.49 |

| Already remitted: | | | |
|---|---|---|---|
| 1a. Hire payment | Value 01.06.09 | USD | -150,000.00 |
| 1b. Hire payment | Value 02.06.09 | USD | -15,000.00 |
| 2. Hire payment | Value 04.06.09 | USD | -70,000.00 |
| 3. Hire payment | Value 18.06.09 | USD | -60,162.00 |
| BALANCE DUE TO OWNERS | | USD | 90,081.49 |

Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RIGHT SEA LIMITED,                                    :
                                                      :
                          Plaintiff,                  :        09 Civ. _____
                                                      :
          - against -                                 :        ECF
                                                      :
OCEAN TRANSPORT & SHIPPING (ASIA) PTE. LTD.,  :
                                                      :
                          Defendant.                  :
------------------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut   )
                       )        ss:  SOUTHPORT
County of Fairfield    )

Darin L. Callahan, being duly sworn, deposes and says:

1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THE DISTRICT

2.      I have attempted to locate the Defendant OCEAN TRANSPORT & SHIPPING

(ASIA) PTE. LTD. within this District.  As part of my investigation to locate the Defendant

within this District, I checked the telephone company information directory, as well as the white

and yellow pages for New York listed on the Internet or World Wide Web, and did not find any

listing for the Defendant.  Finally, I checked the New York State Department of Corporations'

online database which showed no listings or registration for the Defendant.

3.      I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.      Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.      This is Plaintiff's first request for this relief made to this Court.

**PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER**

6.      Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy, Anne C. LeVasseur, Darin L. Callahan or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

7.      Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

8.      To the extent that this application for an Order appointing a special process server

-2-

with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

### PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.     Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.     Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served; and throughout the next day, provided that process is served that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated:        September 17, 2009
              Southport, CT

                                                    _____
                                                         Darin L. Callahan

Sworn and subscribed to before me
this 17th day of September, 2009

_____
Notary Public

Sharmaine M Passaro
Notary Public-Connecticut
My Commission Expires
March 31, 2014

–3–